846 So.2d 568 (2003)
Maria BARNES, Appellant,
v.
THE KELLOGG COMPANY, a Michigan Corporation, and Albertson's, Inc., a Delaware Corporation, Appellees.
No. 2D01-3775.
District Court of Appeal of Florida, Second District.
April 25, 2003.
*569 Scot E. Samis of Abbey, Adams, Byelick, Kieran, Mueller & Lancaster, L.L.P., St. Petersburg (withdrew after briefing), for Appellant.
Maria Barnes, pro se.
J. Gregory Giannuzzi of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Tampa, for Appellees.
ALTENBERND, Chief Judge.
Maria Barnes appeals a judgment awarding attorneys' fees to The Kellogg Company and Albertson's, Inc., based on a proposal for settlement filed pursuant to Florida Rule of Civil Procedure 1.442 and section 768.79, Florida Statutes (1999). Ms. Barnes argues that the proposal was defective and will not support an award of fees because the two defendants made a unified offer to her, which prevented her from accepting the offer from one defendant or the other. We conclude that a unified offer was permissible under the facts of this case. Ms. Barnes sustained damages that could not be apportioned between the two defendants. Moreover, one defendant, the retailer, was strictly liable for the alleged latent manufacturing error of the other. In this situation, it is permissible for the defendants to propose a joint settlement, the terms of which contemplate a settlement with both.
In August 1997, Ms. Barnes filed a lawsuit against Kellogg and Albertson's alleging that she had suffered physical and psychological injuries because she inadvertently ate a bowl of cereal in September 1995 containing live insects. The complaint contained three counts. She sued both Kellogg and Albertson's for strict liability, alleging that the cereal was unfit for human consumption and that it was in the same condition when she ate it that it had been in when it left Kellogg, the manufacturer. She sued both defendants for breach of an implied warranty of merchantability. Finally, she sued Kellogg alone for negligent manufacture of the cereal.
Ms. Barnes did not allege that Albertson's committed any act of negligence. It merely sold her a box of cereal that contained *570 insects as a result of the manufacturing process. The insects were a latent condition that Albertsons's could not discover because the insects were inside the sealed container. Although it played no active role in creating this condition, Albertson's, as the retailer, could be liable for such a box of cereal. See § 672.314, Fla. Stat. (1999); Sencer v. Carl's Mkts., Inc., 45 So.2d 671 (Fla.1950); Wagner v. Mars, Inc., 166 So.2d 673 (Fla. 2d DCA 1964).
Albertson's and Kellogg were represented by one attorney from the inception of this litigation. In December 1999, that attorney filed a proposal for settlement pursuant to rule 1.442 and section 768.79 in the amount of $95,000. The text of that proposal stated:
(A) This proposal is made by Defendants, the Kellogg Company, a Michigan Corporation, and Albertson's, Inc., to Plaintiff, Maria Barnes;
(B) This proposal is attempting to resolve all claims that are, or may be, made by Plaintiff in the instant action in which this proposal is made and as alleged by Plaintiff's pending complaint, or that could be raised by Plaintiff as arising out of the incident or incidents which are the subject of Plaintiff's complaint;
(C) The relevant conditions of this proposal are that Plaintiff will execute a general release of all claims against any and all persons or entities, inclusive of a warranty that there are no outstanding medical or attorney or other forms of liens and inclusive of a hold harmless against any such claim asserting such liens;
(D) Defendants propose settlement to occur upon payment by Defendants to Plaintiff in the total sum of $95,000.00 and that there are no non-monetary terms of this proposal, with the exception of any relevant conditions set forth in paragraph (C) above;
(E) There is currently no pending claim for punitive damages; however, the amount set forth in (D) is deemed to include consideration for the payment of any potential claim for punitive damages; and
(F) This proposal is to include any attorney's fees and costs of the Plaintiff and attorney's fees are/are not[[1]] part of the legal claim.
Ms. Barnes did not accept this proposal. In September 2000, the trial court ultimately dismissed her action with prejudice because it determined that Ms. Barnes had committed a fraud upon the court. This court affirmed that decision in an earlier appeal. See Barnes v. Kellogg Co., 825 So.2d 376 (Fla. 2d DCA 2002) (table decision).[2]
Shortly after the trial court entered the order of dismissal, the defendants filed a motion for costs and fees. Following an evidentiary hearing, the trial court determined that the facts in this case permitted a joint proposal for settlement without requiring the proponents to apportion the amount between them. Accordingly, it entered judgment against Ms. Barnes in the *571 total amount of $45,779. She challenges the portion of the judgment that awarded attorneys' fees.[3]
Rule 1.442(c)(3) provides:
A proposal may be made by or to any party or parties and by or to any combination of parties properly identified in the proposal. A joint proposal shall state the amount and terms attributable to each party.
Thus, a proposal may be made to a party by "any combination of parties" as long as those parties are properly identified in the proposal. Although the joint proposal must state the amount and the terms of the proposal "attributable to each party," nothing in the rule prohibits two defendants from making a joint proposal to one plaintiff in which the amount of the settlement is attributed jointly and severally to both defendants and where the terms of the proposal contemplate that both defendants will be dismissed with prejudice from the lawsuit.
It is well established that the offer of judgment statute and the related rule must be strictly construed because they are in derogation of common law. See Willis Shaw Express, Inc. v. Hilyer Sod, Inc., 28 Fla. L. Weekly S225, S225, 2003 WL 1089304, ___ So.2d ____, ____ (Fla. Mar. 13, 2003). As a result, virtually any proposal that is ambiguous is not enforceable. See, e.g., Twiddy v. Guttenplan, 678 So.2d 488 (Fla. 2d DCA 1996). A proposal to two or more plaintiffs who each have a claim for their own separate damages is normally unenforceable because it requires them to aggregate their damages or settle their separate claims in some collective fashion. See Allstate Indem. Co. v. Hingson, 808 So.2d 197 (Fla. 2002); Allstate Ins. Co. v. Materiale, 787 So.2d 173 (Fla. 2d DCA 2001). Likewise, a proposal from two or more plaintiffs who each have a claim for their own separate damages is normally unenforceable. See Hilyer Sod, 28 Fla. L. Weekly at S225, ___ So.2d at ____. A plaintiff's collective proposal to two or more defendants who have varying degrees of liability and may have rights to contribution between or among one another is also unenforceable. See C & S Chems., Inc. v. McDougald, 754 So.2d 795 (Fla. 2d DCA 2000).
This court has held, however, that a plaintiff who sues two defendants, one of whom is vicariously liable for the other, may be liable for fees on an offer made on behalf of both defendants when the jury returns a defense verdict. See Danner Constr. Co. v. Reynolds Metals Co., 760 So.2d 199 (Fla. 2d DCA 2000). Although the strict liability of a retailer for a manufacturer's product is not usually described as a form of "vicarious" liability, it is a form of liability without fault where the retailer is required to pay for damages caused by the manufacturer's error.[4] There is no rational method to apportion fault between the strictly liable retailer, who has committed no negligent act, and the manufacturer who produced a product with a hidden defect. In such a case, where the retailer's liability is not based on fault, section 768.81(3), Florida Statutes *572 (1999), does not allow the defendants to apportion damages between themselves. They are jointly and severally liable for all damages. Under these circumstances, we see nothing improper with a joint offer.
If anything, authorizing joint offers in such cases will facilitate settlements, which is the intended purpose of section 768.79. If the retailer and the manufacturer were each required to file proposals in the full amount of the expected damages, then the plaintiff could accept a full recovery from the first offer while continuing litigation against the second. A fifty percent offer from either defendant would have no impact on the plaintiff's decision to try the case when both defendants are jointly and severally liable for the entire judgment. Any settlement by the retailer would merely shift the lawsuit so that the retailer was the plaintiff seeking indemnity from the manufacturer. Thus, a joint offer by a retailer and a manufacturer, when the retailer has committed no alleged independent negligent act, does not restrict the plaintiff's ability to evaluate or negotiate the claim and it facilitates overall settlement of the dispute. We have carefully reviewed the Florida Supreme Court's recent opinion in Hilyer Sod, 28 Fla. L. Weekly S225, ___ So.2d ___, but we do not interpret that opinion as overruling the factually distinguishable case of Danner Construction, 760 So.2d 199, or as prohibiting the offer made in this case under these circumstances.
Affirmed.
FULMER and WHATLEY, JJ., Concur.
NOTES
[1] The drafter of this document apparently did not select between the "are" and "are not" designations. Ms. Barnes had requested attorneys' fees in her complaint but had not alleged a factual basis for this request. Because the case was dismissed and Ms. Barnes was never entitled to fees under any theory, this ambiguity in the proposal was not discussed in the trial court and has not been argued as an issue on appeal.
[2] In this appeal, Ms. Barnes continues to argue fervently that the trial court erred in dismissing her lawsuit because she did not commit fraud. This panel has no authority to revisit the merits of that order of dismissal or the earlier appeal. Thus, despite her pleas, this court cannot review this issue for Ms. Barnes.
[3] The award of attorneys' fees was based on an hourly rate of $95 and time totaling approximately 400 hours. No multiplier was used in setting this amount.
[4] This technical liability is often a matter resolved between the two defendants by an indemnity agreement and may also be a situation entitling the retailer to common law indemnity against the at-fault manufacturer. See, e.g., Pafco Gen. Ins. Co., as Subrogee of World Office Prods. Mfg. Inc. v. Wah-Wai Furniture Co., 701 So.2d 902 (Fla. 3d DCA 1997) (involving retailer's action for indemnity against manufacturer of defective product); Costco Wholesale Corp. v. Tampa Wholesale Liquor Co., Inc., 573 So.2d 347 (Fla. 2d DCA 1990) (involving plaintiff suit against retailer for defective product in which retailer then brought third-party indemnity actions). In this case, Kellogg and Albertson's had entered into an indemnity agreement. Our holding, however, rests not on their private agreement but on the passive/active nature of strict liability in the retailer/manufacturer setting.